KNIGHTS OF THE MODERN MACCABEES v. GRICE.

LIFE INSURANCE — MUTUAL BENEFIT CERTIFICATE — BENEFICIARY —TRUSTS—INFANTS—ESTOPPEL.

The holder of a mutual benefit certificate attempted to substitute his aunt as beneficiary in place of his sister who had become a nun, and, on learning that an aunt was not allowed to be beneficiary under the rules of the order, had his minor half-brother substituted, at the same time taking from him a trust agreement, in which the aunt joined, that she should have the proceeds of the certificate except $100 to be paid to the half-brother. The recitals in the agreement and other circumstances showed that compensation to the aunt for her care of the insured was intended, but she was more than twice paid for all her services by other property deeded to her by the assured. *Held*, that the minor half-brother was not estopped to claim the advantages of a beneficiary while denying the obligations of a trustee.

Appeal from St. Clair; Law, J. Submitted April 9, 1907. (Docket No. 42.) Decided May 18, 1907.

Bill of interpleader by the Knights of the Modern Maccabees against Julia Grice and Maurice Walsh to determine the title to a benefit certificate. From a decree for defendant Walsh, defendant Grice appeals. Affirmed.

Complainant filed a bill of interpleader and paid the fund in dispute into court. Defendants by order of the court interpleaded, and from a decree directing payment of the money to defendant Walsh defendant Grice has appealed. The finding made by the court below, which is here set out, states the facts:

"1. On July 8, 1903, George F. Kroetsch, who was then between 21 and 22 years of age, and whose parents were deceased, went to live with his aunt, defendant Julia Grice, at the home of herself and her husband in the village of Lake City, Missaukee county, Michigan.

"2. At the time mentioned in paragraph 1, said George F. Kroetsch was an invalid, having been sick with the typhoid fever in the fall of 1902, and not having recovered his health. He remained at the home of his aunt until he died on October 10, 1904. During this period he was an invalid, but not all the time confined to his bed, being able to sit up and be around the house a considerable part of the time. However, he was unable during any of this period to do any work, and required constant care and attention, which was given him by his said aunt, defendant Julia Grice. He was well cared for and his necessities well looked after during this time. After his death on October 10, 1904, his funeral expenses were paid by the said Julia Grice. No compensation has been received by Julia Grice for these services and expenses except as hereinafter set forth. The deceased left no estate.

"3. At the time George F. Kroetsch went to live with the said defendant Julia Grice, he was the owner of 80 acres of land located in Argyle township, Sanilac county, Michigan, worth $1,850. This land was devised to him by Anna Walsh, his mother (who was also the mother of defendant Maurice Walsh), with a condition imposed that he should pay to Argyle township a debt of $94. On the 15th day of January, 1904, he signed and delivered to said Julia Grice a warranty deed of said land. In said deed it is recited after a description of the land:

"'That the express condition of this deed and the consideration named herein as follows, to wit: that whereas in accordance with a certain will made by Anna Walsh and recorded in the probate court in and for said county of Sanilac which will named the said George F. Kroetsch as legatee and heir to the above named and described lands, and the said conditions named therein (the said will)

in relation to a certain sum to be paid to the township of Argyle, Sanilac county, State of Michigan, in the sum of ninety-four dollars by said George F. Kroetsch, which sum is hereby expressly assumed by the said Julia Grice, and for the further consideration that she, the said Julia Grice, is now and will take care and provide and make a home for the said grantor, George F. Kroetsch, who is now an invalid having no home only with the said Julia Grice, and that the said deed and conveyance in fee simple shall become operative and of full force after his death the said George F. Kroetsch.'

" After this deed was delivered, the defendant Julia Grice collected rent for the 80 acres of land, and after the death of George F. Kroetsch paid the township of Argyle the $94 referred to, and has since had possession of the land and enjoyed the rentals from the same, and claims to own it under said deed. She paid the said George F. Kroetsch for said land nothing except as above set forth. At the time this deed was made and delivered George F. Kroetsch was sick and in a weak condition.

"4. On July 8, 1903, George F. Kroetsch was the holder of an endowment certificate of $1,000 in the complainant order, a fraternal benefit society. In said certificate his sister, Mary Kroetsch, was named as the beneficiary. He had no father or mother living, and his near relatives consisted of his sister Mary, and his half-brother, defendant Maurice Walsh, then a boy between 15 and 16 years of age. On October 1, 1903, he surrendered this certificate and requested complainant society to issue a new one to him payable to his aunt, defendant Julia Grice. This request was refused, for the reason that under complainant's laws an aunt could not be a beneficiary of her nephew. On May 17, 1904, George F. Kroetsch applied for disability benefits under his said certificate. His application was approved May 31, 1904, and $50 paid to him by complainant on June 3, 1904, and on May 26, 1904, a disability certificate was issued to him by complainant in lieu of the endowment certificate theretofore held by him; and therein his sister Mary was named as the beneficiary as she had been in the endowment certificate. Soon after this time his sister, Mary, entered a convent and became a nun. Under the laws of complainant order, the only persons eligible to become beneficiaries of George F. Kroetsch were his sister, Mary, and his half-brother, defendant Maurice Walsh.

"5. On or about the 12th day of July, 1904, a paper

writing, of which the following is a copy, was signed by George F. Kroetsch, defendant Julia Grice, and defendant Maurice Walsh:

" 'These articles of agreement entered into by and between Julia Grice, of Lake City, Michigan, party of the first part, and Maurice Walsh, of Austin, Sanilac county, Michigan, in this, to wit:

" 'That, whereas, one George Kroetsch, now an invalid and half-brother to said Maurice Walsh, is now making his home with said Julia Grice of Lake City, and has been for nearly two years last past, and has made application to the great camp of the Modern Maccabees for a change of beneficiary on policy No. 130392 of the said policy from Mary Kroetsch to the said Maurice Walsh, and that by reason of his infirmities and total disability the said George F. Kroetsch. feeling that his aunt, the said Julia Grice, should be duly compensated and paid for said services willingly given and bestowed upon him during his lifetime and as long as he shall live, and the same care and interest to continue in providing for him a home and medical treatment, and the paying of costs and expenses, board and work of nursing as heretofore given and provided, and that said George Kroetsch does hereby make this request of said half-brother, Maurice Walsh, that these conditions shall be fully complied with upon the said consideration that said policy No. 130392 of the Modern· Maccabees taken out by him, the said George F. Kroetsch, wherein one Mary Kroetsch was named as beneficiary shall be changed and he the said Maurice Walsh to be the beneficiary, and that in the event of the death of said George F. Kroetsch, the said Maurice Walsh shall pay to my aunt, the said Julia Grice, the said insurance so received from the said policy for the reason and consideration herein named with this additional consideration that the said Julia Grice in addition to all of the benefits, expenses, costs, and care received by me the said George F. Kroetsch, she has paid all my assessments for several years back on said insurance, but that the said Maurice Walsh shall receive from the said policy the sum of one hundred dollars, and the balance from the said policy shall be paid by the said Maurice Walsh to my aunt, the said Julia Grice, and I do hereby so authorize, appoint and constitute the said Julia Grice as my true and lawful attorney, to act in my stead in all matters pertaining to said moneys that is to be received from the said policy No. 130392 of the Modern Maccabees, and that she shall give the proper receipt therefor and allow the said Maurice Walsh the sum of one hundred dollars.

" 'In witness whereof, I do hereby subscribe my name.

" 'GEORGE F. KROETSCH.

" ' Witness:   C. L. GOLL.

"'As per above conditions, we, the said Maurice Walsh and Julia Grice, do mutually agree that the said conditions herein named by the said George F. Kroetsch shall be binding upon ourselves, our heirs, administrators or assigns, and that in all matters as herein specified, the same shall be and is a part of this contract.

"'In witness whereof we have hereunto set our hands and seals this 12th day of July, 1904.

> "'Julia Grice.
> "'Maurice Walsh.

"'C. L. Goll.
"'Eber G. Hitchens.'

"This paper was drawn by Attorney Charles L. Goll, the same person who drew the deed of January 15, 1904, heretofore referred to, and was signed by defendant Julia Grice, and by George F. Kroetsch at the Grice home in Lake City, when only Julia Grice, her husband, Charles L. Goll, and said George F. Kroetsch were present. The compensation for the services of the attorney in drawing both the deed and the agreement were paid by Julia Grice. This paper was then given to Richard Grice, husband of defendant Julia, and taken by him to defendant Maurice Walsh, whom he found at the home of the father of Maurice in Sanilac county, Michigan, unloading hay in the barn in company with the father and another man. Mr. Grice then told Maurice, in substance, that his half-brother George, was quite sick at the Grice home at Lake City, and needed care and attention, and that the arrangement as shown by the writing had been made in order that defendant Julia might receive compensation for such care and attention as had been and would be provided, and also for expenses incurred and to be incurred in connection therewith. Mr. Grice informed Maurice that he would get $100 out of the proceeds of the policy, should his half-brother George die. No mention was made to Maurice or his father by Mr. Grice of the conveyance of the 80 acres of land from George F. Kroetsch to Julia Grice, which had been made on the 15th day of the preceding January, and at that time defendant Maurice had no knowledge that such a conveyance had been made, but supposed that his half-brother, George, still retained the title to this land, which had been devised to him by Anna Walsh, the mother of George Kroetsch and himself, a one-half interest in which would have descended to him had his half-brother died intestate without conveying the land prior to death. With the understanding

that it was essential to the welfare of his half-brother, George, and in order that defendant Julia Grice might receive pay for the services she had rendered and would render to him, and for expenses paid and to be paid, and in ignorance of the deed of the land, defendant Maurice Walsh signed this paper. There is no proof that this paper ever came into the possession of George Kroetsch, or was ever seen by him after the same was signed by Maurice Walsh. At the date of this agreement George F. Kroetsch was quite sick and in a weak condition.

"6. On July 27, 1904, George F. Kroetsch surrendered his disability certificate then held by him in which his sister, Mary, was named as beneficiary, and requested that a new one be issued to him payable to defendant Maurice Walsh, and such certificate was issued on August 2, 1904, and was in force at the time of his death and in the possesssion of defendant Julia Grice.

"7. After the death of George F. Kroetsch, both defendants filed claims with the complainant order; Maurice Walsh claiming the balance of $950 due on the certificate, and Julia Grice claiming at least $850 under the terms of the paper writing set forth in paragraph 5. This was the first notice the complainant had that any one other than Maurice Walsh, the beneficiary named in the certificate, had any interest in it. This resulted in the commencement of this suit by the filing of a bill of interpleader by the complainant order on March 7, 1906. After a partial hearing, an interlocutory decree was entered, providing that the defendants do interplead and settle the matter in controversy between themselves, and that on the payment of $950 into the hands of the register of this court the cause be discontinued as to complainant. This is the hearing as provided in the decree of interpleader.

"8. It will not be necessary to make any specific finding as to the value of the services of defendant Julia Grice in caring for George F. Kroetsch, or to determine the amount she has paid out for him. Allowing the widest reasonable latitude to the claims made, and admitting the testimony offered to prove them, some of which is clearly incompetent under section 10212, 3 Comp. Laws, the value of said services and the sum of the expenditures made would not be more than equal to one-half the value of the land deeded to her by George F. Kroetsch as heretofore set forth. Defendant Julia Grice is in no sense a creditor of the estate of George F. Kroetsch.

"9. The signature of defendant Maurice Walsh to the agreement set forth in paragraph 5 was procured from him by a concealment of material facts which should have been disclosed to him and which he was entitled to know. At the date of this agreement, defendant Julia Grice had furnished care and support to George F. Kroetsch for about six months in consideration of the deed to her of the 80 acres of land. The facts regarding this deed and of the arrangement thereunder were not recited nor referred to in the agreement, nor disclosed to Maurice by Richard Grice, the husband of Julia. Whether this should be called positive or constructive fraud on defendant Maurice Walsh is immaterial; it is, at least, one or the other."

The conclusions of law are:

"1. The defendant Julia Grice has failed to establish any legal or equitable right to the insurance fund in controversy or to any part of it.

"2. The legal beneficiary named in the benefit certificate at the time of the death of George F. Kroetsch is Maurice Walsh, and he is entitled to receive the $950 due from complainant, and now in the hands of the register of this court, less complainant's costs as provided in the decree of interpleader heretofore entered, with costs against defendant Julia Grice."

*F. O. Gaffney* (*Henry Miltner*, of counsel), for appellant.

*Frank T. Wolcott*, for appellee.

OSTRANDER, J. (*after stating the facts*). There is no appeal from the order directing defendants to interplead, and it is therefore unnecessary to consider whether in such a case, where one defendant claims all of the fund, the other a part of it, and one is by the laws of the complainant and the statute a proper beneficiary, and is named as such, and the other is not, and cannot be, a beneficiary, and is not named as such in the certificate, a proper case for interpleading is made out.

We affirm the findings of the court below, with this exception: We regard it as entirely immaterial whether

defendant Walsh was or was not informed of all the facts preceding his signature of the so-called trust agreement. He had at that time no interest in the benefit certificate. His brother, the assured, had the right to do as he pleased with his farm. It is not found that in parting with that he was defrauded or was unduly influenced; nor does it appear that defendant Walsh would have been made a beneficiary if he had declined to execute the agreement. The reasonable inferences support an opposed conclusion. The finding that his signature to the agreement was procured by fraud, or by concealment of facts which he was entitled to know, is not agreed to.

Defendant Grice knew that the complainant had refused to permit her to be substituted as beneficiary in the certificate, and she knew the reason for such refusal. She was party to a scheme to secure by indirection what could not be directly secured, in violation of the laws of complainant association and of the State policy which permits such associations to exist. She is forced to rely upon the so-called trust agreement, and not upon the certificate. The recitals in the paper writing upon which she relies, as well as the averments in her answer and the testimony in her behalf, permit the conclusion that compensation for her services and interest was intended to be secured. Defendant Walsh is the named and legal beneficiary, is an infant, and could be estopped to claim the advantages of a beneficiary, while denying the obligations of a trustee for the benefit of Grice, upon no theory other than the one that Grice remained unpaid. She has been paid.

The decree is affirmed, with costs.

McALVAY, C. J., and CARPENTER, GRANT, and BLAIR, JJ., concurred.